**Margaret NEALON, Plaintiff–Appellant,**

**v.**

**Michael P.W. STONE, Secretary of the Army, Clarence Thomas, Chairman, Equal Opportunity Commission, Defendants–Appellees.**

**No. 91–2347.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1991.

Decided March 2, 1992.

George Michael Chuzi, Kilijarvi & Chuzi, P.C., Washington, D.C., argued, for plaintiff-appellant.

Mortimer C. Shea, Jr., Office of the Judge Advocate General, U.S. Army, Arlington, Va., argued (Henry E. Hudson, U.S. Atty., George M. Kelley, III, Norfolk, Va., on brief), for Michael P.W. Stone.

Susan Lisabeth Starr, E.E.O.C., Washington, D.C., argued (Donald R. Livingston, Acting Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Carolyn L. Wheeler, Asst. Gen. Counsel, E.E.O.C., on brief), for E.E.O.C.

Before ERVIN, Chief Judge, TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation, and HERLONG, United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Margaret Nealon filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) contending that the U.S. Army had violated her rights under the Equal Pay Act of 1963, 29 U.S.C. § 206 *et seq.* (1988) (EPA), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988), by paying her a lower salary than a man who performed similar work. The EEOC initially found that there was reasonable cause to believe that the Army discriminated against her ("EEOC I"), but erroneously applied private sector procedures for the public sector charge. The EEOC reversed its position twenty months later ("EEOC II"), finding that Nealon's charge of discrimination lacked reasonable cause. Nealon then brought this suit in the Eastern District of Virginia under the EPA and Title VII seeking either to enforce the initial EEOC reasonable cause findings or, alternatively, to bring both EPA and Title VII claims *de novo.* The district court refused to enforce EEOC I and dismissed the action on the grounds that the statute of limitations barred Nealon's EPA claim and failure to exhaust administrative remedies barred her Title VII claims. We affirm the district court's holding that EEOC I did not become enforceable and that Nealon's Title VII discrimination claim is barred by her failure to exhaust administrative remedies. We reverse with respect to Nealon's Title VII retaliation claim, however, as she need not exhaust administrative remedies to pursue it. Furthermore, we hold that Nealon's EPA claim is not time-barred both because she alleges a continuing violation and the apparently favorable EEOC I decision equitably tolled the EPA.

### I.

Plaintiff-appellant Margaret Nealon is a female civilian employee of the U.S. Army. She was temporarily assigned as Chief of the Editing Branch, Army Extension Training Directorate ("Directorate"), Army Training and Support Center, U.S. Army Training and Doctrine Command (TRA-

DOC) in April 1981 and was permanently assigned to this position in December 1983. Nealon alleges that the Editing Branch is equivalent to the Design Branch within the Directorate's Literature Division. The Design Branch Chief, a man, has always been graded at least at the GM–13 level, while Nealon has never been paid higher than a GS–12 salary. She argues that this differential is discriminatory.

The classification of her position has met with some confusion. The Civilian Personnel Office (CPO) graded Nealon's job as GS–13 in November 1982 but later reversed its position, changing the job's grade back to GS–12 in September 1983. In January 1984, a contract classification specialist graded her job at GS–13. In November 1984, CPO permanently classified the job as GS–12, and Nealon received official notice of this classification on December 23, 1984.

Nealon first protested the classification decision through internal procedures. On January 4, 1985, she filed a written appeal of the classification to the CPO *pro se*, alleging violation of "the Equal Pay Act that states that males and females having like duties and responsibilities should also have equal pay." The CPO rejected her appeal in February 1985. In March 1985, Nealon contacted the Fort Eustis and TRA-DOC Offices of Equal Employment Opportunity (EEO); both informed her that they lacked jurisdiction over an Equal Pay Act violation, and neither they nor the CPO advised Nealon that a Title VII claim was proper on the allegations. Nealon also unsuccessfully appealed to the Office of Personnel Management (OPM) and the Merit Systems Protection Board. Thereafter, Nealon learned that she should file a charge with the EEOC, and she filed a charge under both the EPA and Title VII on August 16, 1985.

The EEOC investigated between March 1986 and March 1987, obtaining statements from Nealon; the higher paid Design Chief; the division chief; and Nealon's former supervisors, who all agreed that the positions were the same and deserved the same pay. On October 7, 1987, the EEOC's Baltimore Regional Office issued its decision on Nealon's EPA complaint ("EEOC I"), finding that there was "reasonable cause to believe the [Army] has engaged in an unlawful employment practice in violation of the Equal Pay Act." Ten months later, on August 24, 1988, the Army requested that the EEOC reconsider its decision. In September 1988, the EEOC reopened the case, apparently based on the uncontroverted fact that it used the procedures for private, not public, employers in processing Nealon's administrative claim. On June 30, 1989, twenty months after EEOC I, the EEOC concluded that the same evidence it examined before did not warrant a finding of a reasonable cause of discrimination ("EEOC II").

Nealon brought suit in federal district court on July 21, 1989, requesting enforcement of EEOC I or *de novo* findings of EPA and Title VII violations, including a retaliation claim. The district court denied enforcement of the EEOC I decision on the ground that such enforcement was inappropriate because the EEOC had processed the claim incorrectly. The court also dismissed the Title VII discrimination claim on the ground that Nealon failed to exhaust her administrative remedies because she did not contact an EEO counselor within the requisite thirty-day period. In addition, the court held that the Title VII retaliation claim was barred for failure to exhaust administrative remedies. Finally, the court dismissed the EPA claim on the ground that the applicable three-year statute of limitations period had run. Nealon timely appealed.

II.

On appeal, Nealon first argues that the passage of time converted EEOC I into a final, binding order which the district court should have enforced. In support of her argument, Nealon relies on the District Court for the District of Columbia's opinion, *Gubisch v. Brady*, 50 Empl.Prac.Dec. (CCH) Para. 39,183, 1989 WL 44083, 1989

U.S.Dist. LEXIS 4317 (D.D.C.1989).[1] In *Gubisch,* the EEOC found that the agency discriminated against the plaintiff and issued a compliance order, but reversed itself sixteen months later. Despite the reversal, the district court enforced the original EEOC order because more than "a short and reasonable time" had passed. 1989 WL 44083, at *10, 1989 U.S.Dist. LEXIS 4317, at *32. The court held that after a period measured in weeks rather than years, agency decisions become final and no longer subject to agency reversal.

We decline to apply *Gubisch* to the facts of this case. In *Gubisch,* the discrimination finding and compliance order were properly issued. In the case at bar, however, the issuance of the order was marred by application of procedures for private rather than public employers. We disagree with Nealon's contention that the public and private procedures are virtually equivalent. Under the procedures applicable to private employers, inadvertently used for Nealon, when the EEOC finds reasonable cause of discrimination, either side can litigate the claim *de novo* in district court. 42 U.S.C. § 2000e–5; 29 C.F.R. § 1601. When the EEOC finds discrimination pursuant to the EPA in a public sector case, it issues a compliance order that is enforceable against the agency. FPM Ltr. No. 551–9(5); MD 107(1.4) (1987). Here, use of the wrong procedures denied the Army the ability to timely appeal the reasonable

cause finding to the EEOC. That denial may well have prejudiced the Army in this case, and thus in this case the procedures were materially different.

Nealon argues alternatively that, even if the two procedures have significant differences, the passage of more than reasonable time eliminates the EEOC's opportunity to rectify its admitted procedural error. *See Mazaleski v. Treusdell,* 562 F.2d 701, 720 (D.C.Cir.1977) (agency's procedural errors cannot be rectified after a short and reasonable time period normally measured by weeks, not years, has passed); *Gubisch,* 1989 WL 44083, 1989 U.S.Dist. LEXIS 4317; *see also Dawson v. Merit Systems Protection Board,* 712 F.2d 264, 267 (7th Cir.1983) (regulation stating that agency could reopen decision at any time had reasonable time period limitation). However, the passage of time simply does not, and cannot, transform a reasonable cause determination into a final compliance order.[2] We therefore affirm the district court's dismissal of Nealon's attempted enforcement of EEOC I as a final compliance order.

### III.

Nealon next argues that if EEOC I did not become binding on the Army, she should be able to pursue her Title VII discrimination and retaliation claims *de novo* in district court.

---

**1.** Nealon names the EEOC as a defendant in the suit for purposes of compelling enforcement of the EEOC I decision. The EEOC contests its inclusion as defendant. This Circuit has already implicitly determined that enforcement in district court of a public sector EEOC finding of discrimination does not require plaintiff to name the EEOC as a party. *Pecker v. Heckler,* 801 F.2d 709, 711 & n. 3 (4th Cir.1986). We have not held, however, that the EEOC, when named, is not a proper party to this type of suit. At least one circuit that has considered this question has not dismissed the EEOC as a party. *Moore v. Devine,* 780 F.2d 1559 (11th Cir.1986), *modifying* 767 F.2d 1541 (11th Cir.1985). We do not decide in the case at bar that the EEOC was a necessary party under Fed.R.Civ.P. 19(a). We decide here only that the EEOC could properly have been joined as a defendant under Rule 20(a), since Nealon's requested relief from the EEOC, to disregard EEOC II and return to EEOC I, arose from the same occurrence as the

case against the Army, and the nature of the EEOC orders was unclear and an explanation of its contested actions was helpful to just adjudication. In addition, common questions of law and fact were involved.

**2.** As we have stated, regarding private employers:

No such finality exists with respect to the EEOC's determination of reasonable cause. Standing alone, it is lifeless, and can fix no obligation nor impose any liability on the plaintiff [company]. It is merely preparatory to further proceedings. If and when the EEOC or the charging party files suit in district court, the issue of discrimination will come to life, and the plaintiff will have the opportunity to refute the charges.

*Georator Corp. v. EEOC,* 592 F.2d 765, 768 (4th Cir.1979).

## A.

The district court below dismissed Nealon's Title VII discrimination claim because she did not contact the Army's EEO counselor within thirty days of the incident giving rise to the complaint. According to the applicable regulation, 29 C.F.R. § 1613.214(a)(1)(i) (1990), a plaintiff must notify the EEO counselor of "the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of ... [when he/she] knew or reasonably should have known of the discriminatory event or personnel action." Nealon acknowledges that her first contact with the Army EEO counselor was seventy-five days after the triggering event, her permanent GS–12 classification, but argues that her *pro se* written appeal to the CPO alleging violations of the EPA, sent within thirty days of the classification, put the Army on notice of her discrimination charge. According to Nealon, it was then the Army's unfulfilled burden to refer her to the EEO counselor.[3]

We reject Nealon's contention. Indisputably, Title VII suits against the government are subject to equitable tolling principles. *Irwin v. Veterans Administration,* — U.S. —, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). However, where an employee fails to make timely contact with the EEO office, courts will equitably toll the statute of limitations only when the government should be estopped from asserting the time bar or if plaintiff did not know about the time requirement.

Neither of these circumstances was present here. As this court has held, the government cannot be estopped from asserting the thirty-day time limit as a defense if "plaintiff has made no showing of affirmative misconduct on the part of the government, which is the least the court would require, even if that would suffice, to rely upon estoppel." *Zografov v. V.A. Medical Center,* 779 F.2d 967 (4th Cir.1985) (citing *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981)). Nealon's only claim of misconduct involves the Army's failure to inform her of her Title VII rights. That conduct occurred after the relevant thirty-day period expired, too late to save Nealon's Title VII claim under a theory of government estoppel.

Neither can Nealon successfully press her claim based on lack of knowledge of the relevant period. The applicable EEO regulation, 29 C.F.R. § 1613.214(a)(4) (1990) (the "(a)(4) exception"), provides:

The agency shall extend the time limits in this section when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them, was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits; or for other reasons considered sufficient by the agency.

Evidence in the record supports the district court's finding that this exception to the thirty-day period is not applicable to Nealon. Nowhere in the record does Nealon state that she was unaware of the thirty-day filing requirement. Moreover, in answer to an interrogatory, Nealon stated that she "recalls generally (but not specifically) knowing of the EEO complaint process before 1979." Finally, the EEO counselor stated in her affidavit that the Army had complied with regulations requiring the posting of EEO complaint procedures and contact personnel on the work premises, and Nealon did not rebut this claim. Given these circumstances, Nealon failed to demonstrate the requisite lack of knowledge to invoke the (a)(4) exception. Accordingly, Nealon's Title VII discrimina-

---

3. The Army contends that Nealon raises this argument for the first time on appeal, and it should therefore be barred from consideration. *See Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Karpa v. Commissioner of Internal Revenue,* 909 F.2d 784, 788–89 (4th Cir.1990). We reject this contention. Nealon's counsel argued below that the Army never told her to go to the EEO Counsel-

lor and that she went to every office and agency she could find to complain about her pay compared to that of the Design Chief. In addition to arguing Army bad faith, he appeared to be inartfully arguing that these other appeals, which prominently include the CPO appeal, should count as a timely EEO contact. Nealon therefore sufficiently raised the issue in the courtroom below to allow its appeal here.

tion claim is barred for failure to exhaust administrative remedies. *See also Zografov,* 779 F.2d 967; *Plowman v. Cheney,* 714 F.Supp. 196, 198–200 (E.D.Va.1989).[4]

## B.

■■■■ Nealon further argues that the district court improperly barred her Title VII retaliation claim for failure to exhaust administrative remedies. As the district court noted in dismissing Nealon's claim, this circuit has not resolved whether a plaintiff asserting a Title VII claim of retaliation for filing a previous EEOC charge must exhaust administrative remedies before suing in federal court. *See Aronberg v. Walters,* 755 F.2d 1114, 1115 n. 1 (4th Cir.1985) (reserving question). We now consider the issue.

All other circuits that have considered the issue have determined that a plaintiff may raise the retaliation claim for the first time in federal court. On consideration, we find these rationales persuasive and adopt this position. We believe that rule is the inevitable corollary of our "generally accepted principle that the scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.' " *Hill v. Western Electric Co.,* 672 F.2d 381, 390 n. 6 (4th Cir.) (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970)), *cert. denied,* 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982); *see also EEOC v. General Electric Co.,* 532 F.2d 359, 373 (4th Cir.1976). The Seventh Circuit includes retaliation for the filing of an EEOC charge as discrimination "like or reasonably related to ... and growing out of such allegations." *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989) (quotations omitted). The *Malhotra* court also

rested its decision not to require a second EEOC filing on practical concerns:

> [H]aving once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation.... [W]e [therefore] join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.

*Id.; see Brown v. Hartshorne Public School District No. 1,* 864 F.2d 680, 682 (10th Cir.1988) (same); *Kirkland v. Buffalo Bd. of Educ.,* 622 F.2d 1066, 1068 (2d Cir.1980) (same); *see also Wentz v. Maryland Casualty Co.,* 869 F.2d 1153, 1154–55 (8th Cir.1989) (same; retaliation claim cognizable even if discrimination claim dismissed, and good faith reasonable belief that underlying challenged action violated law sufficient to establish prima facie case); *Gottlieb v. Tulane Univ. of Louisiana,* 809 F.2d 278, 284 (5th Cir.1987).

In the case at bar, Nealon correctly filed a Title VII and an EPA charge with the EEOC. She claims that the Army retaliated against her for taking this action. She then brought suit in federal court when the EEOC ruled against her. She clearly had a reasonable, good faith belief that the Army discriminated against her, justifying her original EEOC charge (two classification reviews placed her at GS–13 and three former supervisors concurred that her position merited such a placement). Conciliation with the Army did not improve her position the first time and would be unlikely to do so a second time. Therefore, we hold that she is entitled to have her retaliation claim heard by the district court.

---

**4.** We hold in Section IV(A) of this opinion that Nealon's Equal Pay Act claim is not barred by the statute of limitations because she asserts a continuing violation. This continuing violation theory is equally applicable to Title VII. *See Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). The presence of a continuing violation could also toll the Title VII thirty-day period for the filing of charges, which

we have stated is akin to a statute of limitations. *See Zografov,* 779 F.2d at 969. However, as Nealon failed to raise the issue of a continuing violation with respect to her Title VII claim below and neither side has addressed the issue before this court, we deem the argument waived. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

## IV.

Nealon argues that her Equal Pay Act claim is not entirely barred by the three-year statute of limitations for willful violations. *See* 29 U.S.C. § 255(a) (1988). She contends that the violation at issue was continuing and therefore the accruing event was not uniquely the date of her GS–12 job classification, December 23, 1984, but rather every time she was paid.[5] Furthermore, she contends that the period should be deemed equitably tolled. We consider each argument in turn.[6]

### A.

Nealon first argues that each issuance of her paycheck at a lower wage than her male counterpart received constituted a new discriminatory action for purposes of EPA limitations accrual. We agree. Instrumental in our determination is the Supreme Court's treatment of the issue of separate paychecks in *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (per curiam). In that case, the Court held that sponsorship by the North Carolina Agricultural Extension Service of single-race clubs did not violate the Fourteenth Amendment where the racial imbalance was the result of the voluntary choice of private individuals. However, the Court also unanimously held that the Extension Service had a positive duty to eradicate salary disparities between white and black workers that had their origin prior to the date when Title VII was made applicable to public employees. *Id.* at 386, 106 S.Ct. at 3002. As Justice Brennan stated for the Court in explaining the per curiam opinion's rationale:

> [T]hat the Extension Service discriminated with respect to salaries *prior* to the time it was covered by Title VII does not excuse perpetuating that discrimination *after* the Extension Service became covered by Title VII....
>
> . . . .
>
> Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII.

*Id.* at 395–96, 106 S.Ct. at 3006–07 (Brennan, J., joined by all other members of the Court, concurring in part). This principle, "too obvious to warrant extended discussion," *id.* at 395, 106 S.Ct. at 3006, which the Court applied to wage discrimination prior to the date Title VII became effective, applies equally well to alleged wage discrimination that occurred after Nealon's initial classification.

---

5. Nealon is limited, however, to recovering only those damages that accrued during the three years prior to filing suit under section 255(a) of the EPA. *See Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050–51 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973).

6. The Army first argues that the continuing violation and equitable tolling theories are not properly before this court, although both sides also briefed the arguments on their merits. However, " 'injustice might otherwise result,' " *Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (quoting *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)); *Karpa v. Commissioner of Internal Revenue,* 909 F.2d 784, 788–89 (4th Cir.1990), if we fail to consider these two theories in this case. It would be unjust to allow the Army to continue to pay Nealon a discriminatory wage should discrimination be found upon remand below merely because her original wage classification occurred more than three years ago, just as it would be unjust to require Nealon to bring suit immediately upon receipt of an apparently favorable EEOC determination. In addition, as we describe *infra,* under the precedent established in *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (per curiam) and *Jenkins v. Home Ins. Co.,* 635 F.2d 310 (4th Cir.1980), the district court's error in failing to utilize the continuing violation theory is "beyond any doubt," *Singleton v. Wulff,* 428 U.S. at 121, 96 S.Ct. at 2877, further supporting our consideration of this argument. *See also Miller v. Premier Corp.,* 608 F.2d 973, 983 (4th Cir.1979) (considering waived argument because of plain error below). Further, the district court below considered and rejected just this continuing violation argument when it cited *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), for the proposition that "mere continuity of employment is insufficient to prolong the life of [an] employment discrimination claim." Therefore, we consider Nealon's continuing violation and equitable estoppel theories here.

The Supreme Court's decision in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), is not to the contrary. *Evans* involved suit by a woman terminated as a flight attendant because she was married. After this practice was declared illegal, she was rehired but not given credit for her former seniority. The Supreme Court held her seniority claim not actionable. According to the Court, her rehiring without seniority was lawful because her original termination lacked legal significance as she had failed to file a timely EEOC charge. While plaintiff emphasized the continuing nature of the alleged wrong, "the emphasis should not be placed on mere continuity; the critical question is whether any *present violation* exists." *Id.* at 558, 97 S.Ct. at 1889 (emphasis added). In the case at bar, Nealon asserts not merely continuing employment, but present violations for limitations purposes. As we stated in *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir. 1980):

> Unlike *Evans*, the Company's alleged discriminatory violation occurred in a series of separate but related acts throughout the course of Jenkins' employment. Every two weeks, Jenkins was paid for the prior working period; an amount less than was paid her male counterparts for the same work covering the same period. Thus, the Company's alleged discrimination was manifested in a continuing violation which ceased only at the end of Jenkins' employment.

█ Otherwise, we noted, "discrimination first inflicted at the date of hiring can thereafter continually violate the plaintiff's rights." *Id.; accord Taylor v. Home Ins. Co.*, 777 F.2d 849 (4th Cir.1985) (same; age discrimination case), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). This continuing violation principle that applies under *Bazemore* to race discrimination violations of Title VII applies also to sex discrimination allegations under the Equal Pay Act. *See Brewster v. Barnes*, 788 F.2d 985, 993 (4th Cir.1986) (following *Jenkins* for EPA claim); *Jenkins v. Home*

*Ins. Co.*, 635 F.2d at 312; *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050–51 (5th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973).

The Army's attempts to distinguish *Jenkins* are unconvincing. It principally relies upon this court's decision in *Woodard v. Lehman*, 717 F.2d 909 (4th Cir.1983). In *Woodard*, we held that a mere allegation of continuing discrimination without any identification of a discriminatory event within the statute of limitations period is insufficient to prove a continuing violation of Title VII. *Id.* at 914–16. Nealon, however, patently suffers current discrimination each time she is paid less than her male counterpart, if her allegations are true.[7]

The Army also argues that the continuing violation theory does not apply to cases involving federal employers because private sector employers have wide latitude in paying their employees while public sector employers do not. Accordingly, the Army argues that Nealon's original classification fixed her pay, which her supervisors were powerless to change, so each paycheck should not be considered a discriminatory event. *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (per curiam), requires rejection of this argument. In that case, the Supreme Court squarely held that the theory applies to public employers. *See id.* at 394–96, 106 S.Ct. at 3006. Finally, the Army argues that the two jobs are not identical and Nealon failed to present "comparable worth" evidence below. However, it is for the district court to determine on the merits whether the two jobs are sufficiently similar to find an EPA violation; Nealon was never permitted to offer evidence on the merits because her suit was dismissed before trial on the Army's motion.

**B.**

█ Finally, Nealon argues that the fact that her favorable EEOC I decision was issued during the limitations period, in October 1987, warrants equitable tolling of

---

**7.** We, of course, express no opinion as to the merits of Nealon's claim here.

the statute of limitations period. We agree.

As a general matter, statutory time limits in suits against the government are subject to equitable tolling principles. *See Irwin v. Veterans Administration,* — U.S. ——, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (holding Title VII subject to equitable tolling). *Loe v. Heckler,* 768 F.2d 409 (D.C.Cir.1985), holding that Title VII time limitations did not begin to run against the plaintiff when she received an apparently favorable agency ruling, is instructive. In *Loe,* the agency EEO officer found discrimination against the plaintiff. The agency agreed to a favorable remedy, and then reneged more than thirty days later. According to the District of Columbia Circuit Court of Appeals:

> The government maintained ... that the thirty day period for filing suit began ... when HEW rendered its wholly favorable decision. This is irresponsible argument. Loe was satisfied with the February 1977 outcome and the stated remedy. She had no grievance until HEW reneged. To insist that Loe have anticipated her employer's dishonoring its Title VII commitment would require that we attribute either the vision of Cassandra to employees or universal bad faith to employers. Title VII does not mandate preemptive strikes as a precondition to judicial oversight of subsequent misconduct. Appellee's contention to the contrary "is hardly worthy of our great government." *Brandt v. Hickel,* 427 F.2d 53, 57 (9th Cir.1970).

*Id.* 111 S.Ct. at 421.

The same principles apply in this case: Nealon's apparently favorable EEOC decision equitably tolled the EPA statute of limitations, which had already begun to run. The Army attempts to distinguish *Loe* because Loe possessed a final decision from the EEOC, while Nealon had merely "an erroneously issued, non-binding, reasonable cause letter, accompanied by an invitation to conciliate." Army Brief at 24. However, this same EEOC letter to Nealon stated flatly that it provided a "determination as to the merits of the subject charge,"

and this determination was that "the two (2) positions require substantially the same level of skill, effort, and responsibility and are performed under similar working conditions." Just as in Loe's case, Nealon had no reason at that point to doubt that the Army would follow the EEOC's determination, and in fact she attempted to conciliate her claim with the Army for a year in hopes that the Army would accept the EEOC's determination.

The Army attempts further to distinguish *Loe* because Nealon's initial filing of her EPA claim with the EEOC was not required by law. However, once she selected the EEOC to investigate her claim, the concerns of judicial economy and EEOC's administrative mandate to resolve claims of discrimination counsel that the rule stated in *Loe* applies here too. The Army also cites cases in which the filing of a claim with the EEOC does not toll the statute of limitations. *See, e.g., Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Army argues that these cases apply with particular force because it notified Nealon by letter before the limitations period ran that filing with the EEOC does not stop the running of the statute of limitations. This argument fails to persuade, however, for it is not the mere filing of a claim that we hold equitably tolls the statute, but rather an apparently favorable agency decision.

Equitable tolling thus provides Nealon an independent ground to preclude a total statute of limitations bar of her EPA claim. Because she brought this suit immediately once it became clear that the administrative process in fact ruled against her, Nealon's action is not barred by the statute of limitations.

## V.

For the foregoing reasons we affirm the district court's dismissal of Nealon's claim for attempted enforcement of EEOC I and her Title VII discrimination claim. We reverse the district court's dismissal of Nealon's Title VII retaliation claim and her

Equal Pay Act claim, and remand for trial on these claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.