**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANGELA J. BROWN,
<u>Plaintiff-Appellant,</u>

v.

MARVIN T. RUNYON, JR., Postmaster
General, United States Postal
Service,
<u>Defendant-Appellee.</u>

No. 96-2230

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-162)

Argued: December 4, 1997

Decided: February 27, 1998

Before WILKINS and HAMILTON, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Lester Kestell, KESTELL & ASSOCIATES, Falls
Church, Virginia, for Appellant. Brian Michael Reimer, Legal Policy,
UNITED STATES POSTAL SERVICE, Washington, D.C., for
Appellee. **ON BRIEF:** Michael P. Deeds, KESTELL & ASSO-

CIATES, Falls Church, Virginia, for Appellant. R. Andrew German, Managing Counsel, Legal Policy, UNITED STATES POSTAL SERVICE, Washington, D.C.; Helen F. Fahey, United States Attorney, James E. Macklin, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this employment discrimination action, we decide whether the district court erred in holding that Angela J. Brown ("Brown") failed to establish prima facie cases of racially discriminatory failure to reinstate and of retaliation against her former employer, the United States Postal Service ("USPS" or "Postal Service"). As well, we decide whether the district court erred in holding that another of Ms. Brown's claims of retaliation was barred because she failed to exhaust her administrative remedies. After so holding, the district court granted summary judgment in favor of the defendant. **1** We affirm the judgment of the district court for the reasons stated below.

I.

Ms. Brown, a black woman, alleges that her former employer, the USPS, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., when, in 1991 and 1993, it declined to reinstate her in her job as a Computer Forwarding Systems ("CFS")

_____

**1** As to questions of law, we review de novo the district court's grant of summary judgment to the defendant. See, e.g., Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir. 1984). As to factual conclusions of the district court, review is for clear error. See, e.g., Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512 (4th Cir. 1994).

Clerk in Merrifield, Virginia. Ms. Brown claims that the Postal Service's decisions not to reinstate her were based on her race and that they constituted illegal retaliation against her in violation of 42 U.S.C. § 2000e-3(a) for having filed an Equal Employment Opportunity ("EEO") sexual harassment claim against a USPS supervisor in 1990.

To make out a prima facie case of discriminatory failure to hire or rehire, a Title VII plaintiff must show that he was treated less favorably in the employment decision at issue than a similarly-situated employee or job applicant from outside of the plaintiff's protected Title VII class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).**2**

As to Ms. Brown's race discrimination claim, the district court

_____

**2** The McDonnell Douglas court's more formulaic prima facie test requires that a Title VII plaintiff offer proof of the following elements:

> (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802.

In focusing most particularly on the fourth prong of the above prima facie test, essentially an inquiry into whether the plaintiff and the employee or applicant from outside the protected class were similarly-situated, we heed the admonition that courts should not plow through Title VII proof schemes in an overly formalistic manner. Rather, courts should rely on Title VII proof schemes only to filter clearly meritless claims or to identify early common nondiscriminatory reasons for adverse employment actions. See Blankenship v. Warren County Sheriff's Dep't, 939 F. Supp. 451, 459 (W.D. Va. 1996) (citing Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir.), cert. denied, 472 U.S. 1021 (1985)). Indeed, even the McDonnell Douglas court itself cautions against rigid adherence to its own prima facie test's elements noting that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13.

3

found that in 1991, after the plaintiff had resigned from the USPS,[3] she made a number of requests to be reinstated in her former job. Ms. Brown alleged that in spite of then-existing "career complement" restraints on all hiring, the USPS reinstated a similarly-situated white USPS employee, Eleanor M. Cilinski, but denied the plaintiff's same requests. The district court, however, found from the record that, as a matter of fact, Ms. Brown was not similarly-situated with the reinstated employee; their respective requests for reinstatement were considered by different USPS supervisors each of whom acted independently.[4]

Moreover, while both Ms. Brown and Ms. Cilinski resigned from the USPS in 1990, the latter left pending an investigation into charges of excessive absenteeism. Ms. Cilinski later adduced medical evidence indicating that she suffered from hypoglycemia which had caused her absences. Joint Appendix ("JA") at 120-21. Based on Ms. Cilinski's hypoglycemia diagnosis, the USPS granted her reinstatement request. JA at 126-27. On the other hand, while Ms. Brown first claimed on June 17, 1991, JA at 107, that allergies to a certain chemical used to strip floor wax in her workplace contributed to her 1990 resignation, the record is clear that at the time of her January and March 1991 requests for reinstatement, she provided the USPS with no evidence of such a medical condition. Only after Ms. Cilinski successfully buttressed her reinstatement request with medical evidence did Ms. Brown present any such element in support of her application for reinstatement.

_____

[3] Ms. Brown worked for the USPS as a Computer Forwarding Systems ("CFS") Clerk in Merrifield, Virginia from 1988 to 1990. On September 9, 1990, she resigned from the USPS and transferred to a secretarial position with the Department of Health and Human Services, National Institute of Health ("NIH") in Bethesda, Maryland.

[4] Ms. Cilinski's request for reinstatement was approved in April 1991 by Gary Johnson, Acting Director of City Operations for the Northern Virginia Division of the USPS. On the other hand, Ms. Brown's 1991 requests for reinstatement were denied by supervisors Maynard Creel in January, by Earlene Greene in March, and by James Strong in June, respectively. Ms. Brown offered no evidence that the supervisors who denied these reinstatement requests were those who approved Ms. Cilinski's same request.

4

Again, not until her June 17, 1991, reinstatement request did Ms. Brown inform the Postal Service about her claimed allergies. On May 13, 1991, however, the Northern Virginia Division of the USPS implemented strict "career complement" restraints on hiring. The Regional Postmaster General decreed that no new hiring by the defendant could be done without "prior Regional approval." JA at 106. This stringent hiring freeze uniquely applied to Ms. Brown's June 1991 reinstatement request but not to Ms. Cilinski's request approved in April 1991 after her hypoglycemia diagnosis. Thus, even assuming that Ms. Brown and Ms. Cilinski were similarly-situated in that both eventually presented the USPS with evidence that medical conditions accounted for their resignations, altogether dissimilar hiring standards governed their reinstatement requests.

To reiterate, the record is clear that distinct USPS supervisory personnel, acting independently, considered Ms. Brown's and Ms. Cilinski's reinstatement requests. Of the two requests, only Ms. Cilinski's included evidence that a medical condition had contributed to her resignation before the employer instituted the stricter hiring freeze which applied to Ms. Brown's June 1991 request. Accordingly, the district court appropriately held that Ms. Brown failed to meet the prima facie burden applicable to her race discrimination claim because the plaintiff and Ms. Cilinski were not similarly-situated. See Cook v. CSX Transportation Corp., 988 F.2d 507, 511 (4th Cir. 1993) (approving comparisons between employees of protected and unprotected Title VII races at prima facie test stage of racially disparate discipline claim) (citing Moore, supra, 754 F.2d at 1105-06).

II.

To establish a prima facie case of retaliation, a Title VII plaintiff must show that (1) he engaged in protected activity under Title VII;[5] (2) his employer took adverse employment action against him; and (3) a sufficient causal connection existed between his protected activity

_____

[5] "Protected activity" includes an employee's ". . . opposition to, or complaint about, an unlawful employment practice." Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 754 (4th Cir.) (citing 42 U.S.C. § 2000e-3(a)), cert. denied, #6D6D 6D# U.S. ___, 117 S.Ct. 70 (1996).

5

and his employer's adverse employment action. <u>Hopkins</u>, 77 F.3d at 754 (citing <u>McNairn v. Sullivan</u>, 929 F.2d 974, 980 (4th Cir. 1991)).

Ms. Brown asserts that the USPS's 1991 decisions not to reinstate her constitute illegal retaliation for her 1990 EEO sexual harassment complaint against one of her supervisors. The district court held that the plaintiff met her burden of production with respect to the first two prongs of the <u>prima facie</u> test. First, Ms. Brown presented evidence that she engaged in protected activity when she filed the harassment complaint. The plaintiff also adduced evidence that the USPS's 1991 denials of her requests for reinstatement adversely affected her. The district court, however, found the record "abundantly clear" that the Postal Service officials who denied the plaintiff's 1991 requests for job reinstatement lacked knowledge of her earlier sexual harassment complaint. JA at 285.

We concur fully with the district court's reading of the record. Thus, we conclude that Ms. Brown failed to meet the third prong of the retaliation <u>prima facie</u> test; she failed to establish a sufficient causal connection between her protected activity and the USPS's 1991 decisions not to reinstate her as a CSF Clerk.

As to the plaintiff's Complaint's retaliation count concerning her employer's denial of her 1993 reinstatement request, the district court held that the claim was barred for failure to exhaust administrative remedies. The court held that the plaintiff failed to initiate contact with an EEO counselor within forty-five days of the date of the alleged discrimination as required by 29 C.F.R.§ 1614.105 (a)(1). JA at 286. The USPS denied Ms. Brown's request for reinstatement on June 23, 1993 but the plaintiff waited until September 9, 1993, well after the forty-five day administrative window had closed, to seek the requisite counseling.

Ms. Brown correctly cites <u>Nealon v. Stone</u>, 958 F.2d 584, 590 (4th Cir. 1992), as holding that retaliation claims almost always relate back to previously filed EEO charges and, therefore, may be raised for the first time in district court without the requirement that a plaintiff have exhausted his administrative remedies. Appellant's Brief at 18-19. Importantly, in adopting the "relation back" rule for retaliation claims, the <u>Nealon</u> court characterized the rule as ". . . the inevitable

6

corollary of our `generally accepted principle that the scope of a Title VII lawsuit may extend to "any kind of discrimination like or related to allegations contained in the [EEO] charge and growing out of such allegations during the pendency of the case before the Commission."'" 958 F.2d at 590 (quoting Hill v. Western Electric Co., 672 F.2d 381, 390 n. 6 (4th Cir. 1982) (emphasis added) (other quotations and citations omitted)). As the "inevitable corollary" of the more general relationship between Title VII's administrative and judicial remedial framework, Nealon's "relation back" rule presupposes both that a retaliation count in a Title VII lawsuit be "related to" and have "grown out" of the EEO charge while the administrative charge remained pending. If either predicate condition is lacking, the rule cannot operate to overcome a plaintiff's failure to have exhausted administrative remedies.

In her district court Complaint, Ms. Brown alleged that the USPS retaliated against her based on her 1990 EEO activity when it denied her reinstatement request in 1993. Ms. Brown now argues that her retaliation claim "relates back" under Nealon to her 1991 EEO complaint. Thus, Brown asserts that the district court erred in holding that she failed to exhaust her administrative remedies in 1993 when she exceeded the allowable time period to seek EEO counseling and that Nealon preserves her retaliation claim.

In order for Brown's Complaint's retaliation count arising from the 1993 reinstatement denial to "relate back" to the plaintiff's 1991 EEO charge, it must be "related to" that agency complaint and have "grown out" of it during its pendency. Nealon, 958 F.2d at 590 (citations and quotations omitted). Here, the retaliation count is"related to" Brown's amended6 1991 EEO charge in that both consist of allegations that the USPS engaged in race discrimination and retaliation when it denied Brown's various reinstatement requests. Nealon's "relation back" rule, however, is inapposite because the retaliation Brown claims to have suffered in 1993 did not "grow out" of the 1991 EEO complaint while it was pending. As Brown herself alleges, both

_____

6 Ms. Brown amended her 1991 EEO complaint on July 5, 1995 adding a claim of retaliation to that of race discrimination. Brown charged that the 1991 denials of her reinstatement requests were in reprisal for her 1990 EEO charges. JA at 168.

7

in her district court Complaint and in her amended 1991 EEO charge, the USPS's assertedly retaliatory refusal to reinstate Brown in 1993 instead grew out of the plaintiff's 1990 EEO charge of sexual harassment. JA at 13, 168. The 1990 charge was not pending in 1993 when the plaintiff claims the employer retaliated against her for filing it; Brown and the USPS signed an EEO settlement of the harassment charges later in 1990. JA at 96.

Thus, Nealon's "relation back" rule is unavailing to the plaintiff. Brown erroneously attempts to attach her 1993 retaliation count to the then-pending 1991 EEO charge, but any such retaliation only could have grown out of the 1990 EEO charge which was settled and extinguished in 1990. The district court properly granted summary judgment to the Postal Service on Brown's retaliation claim related to the 1993 reinstatement request denial because the plaintiff failed to exhaust her administrative remedies.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.